LAW OFFICE OF MYLES S. BREINER

MYLES S. BREINER      4364
1003 Bishop Street, Suite 2150
Honolulu, Hawaii   96813
Telephone:   (808) 526-3426
Facsimile:   (808) 521-7680
myles@breinerlaw.net

REVERE & ASSOCIATES
A Limited Liability Law Company

TERRANCE M. REVERE                5857
Pali Palms Plaza
970 N. Kalaheo Ave., Suite A301
Kailua, Hawaii 96734
Telephone:   (808) 791-9550
Facsimile:   (808) 791-9551
terry@revereandassociates.com

Attorneys for Plaintiffs
LORETTA TAYLOR and
ATLANTICA TANUVASA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LORETTA TAYLOR and ATLANTICA TANUVASA | ) Civil No.: ) (Other Non-Vehicle Tort) |
| Plaintiffs, | ) ) |
| vs. | ) **COMPLAINT; DEMAND FOR** ) **JURY TRIAL; SUMMONS** ) |
| U.S. DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF PRISONS; HIROMICHI KOBAYASHI, individually and in his official capacity; | ) ) ) ) |

MIKAEL RIVERA, individually and in )
his official capacity; EDWARD )
BALACUA, individually and in his )
official capacity; DOE DEFENDANTS )
1-10; DOE PARTNERSHIPS 1-10; )
and DOE CORPORATIONS 1-10 )
)
)
                    Defendants. )

## COMPLAINT

Plaintiffs, LORETTA TAYLOR and ATLANTICA TANUVASA, by and through their undersigned attorneys, hereby complains and alleges as follows:

## I.   JURISDICTION AND VENUE

1.     All parties resided or were duly incorporated in the State of Hawaii at the time of the alleged incidents.

2.     Plaintiffs were residents of the City and County of Hawaii, State of Hawaii.

3.     The situs of the tortious acts is the Federal Detention Center, Honolulu (FDC Honolulu) located in Honolulu, Hawaii.

4.     Plaintiffs' claims for Injunctive and Declaratory relief are proper under 28 U.S.C. § 1331 (civil actions arising under the laws of the United States), and the United States District Court has original subject matter jurisdiction over this matter against the State of Hawaii.

5.     Plaintiffs' claims for relief are appropriate under 42 U.S.C. § 1983 (color of law), and subject matter jurisdiction is proper in the United States District Court for the District of Hawaii.

6.     Plaintiffs' ancillary claims are within the appropriate jurisdiction for the United States District Court for the District of Hawaii.

7.     Upon information and belief, Defendants Hiromichi Kobayashi, Mikael Rivera, and John Doe 1 were, at all times during the alleged incidents, employed by the U.S. Department of Justice (hereinafter referred to as "DOJ").

8.     Upon information and belief, Defendants Hiromichi Kobayashi, Mikael Rivera and John Doe 1 were, at all times during the alleged incident, residents of the State of Hawaii.

## II.     THE PARTIES

9.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

10.    Plaintiff LORETTA TAYLOR (hereinafter referred to as "Plaintiff Taylor"), was, at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

11.    Plaintiff ATLANTICA TANUVASA (hereinafter referred to as "Plaintiff Tanuvasa"), was, at all times relevant herein, a resident of the City and County of Honolulu, State of Hawaii.

12.    Defendant U.S. DEPARTMENT OF JUSTICE, (hereinafter referred to as "DOJ") is and/or was, at all times relevant hereto, a governmental entity governing a prison/correctional facility as an employer under the color of law.

13.    Defendant FEDERAL BUREAU OF PRISONS, (hereinafter referred to as "FBP") is and/or was, at all times relevant hereto, a governmental agency

governing a prison/correctional facility as an employer under the color of law.

14.   Defendant HIROMICHI KOBAYASHI, (hereinafter referred to as "Defendant Kobayashi") is and/or was, at all times relevant to this Complaint, the Warden of the Federal Detention Center, Honolulu (FDC Honolulu), employed by the U.S. Department of Justice, and the person responsible for the proper administration of FDC Honolulu.  Defendant Kobayashi is being sued in his individual and official capacities.

15.   Defendant MIKAEL RIVERA, (hereinafter referred to as "Defendant Rivera") is and/or was, at all relevant times to this Complaint, an Adult Correctional Officer (ACO), employed by the U.S. Department of Justice. Defendant Rivera is being sued in his individual and official capacities.

16.   Defendant EDWARD BALACUA, (hereinafter referred to as "Defendant Balacua") is and/or was, at all relevant times to this Complaint, an Adult Correctional Officer (ACO), employed by the U.S. Department of Justice. Defendant Balacua is being sued in his individual and official capacities.

17.   Defendants DOE DEFENDANTS 1-10, DOE PARTNERSHIPS 1-10, and DOE CORPORATIONS 1-10 (hereinafter referred to as "Doe Defendants") are sued herein under fictitious names for the reason that their true names, capacities, and responsibilities are presently unknown to Plaintiff, but upon information and belief they are persons, entities, government agencies, and/or partnerships who were in some manner presently unknown to Plaintiff engaged in the activities alleged herein; and/or are persons who conducted some activity in a

negligent, wrongful, and/or willful manner or who failed to fulfill a duty or obligation, which action, conduct, error or omission was the proximate cause of injuries or damages to Plaintiff; and/or were in some manner related to the previously named Defendant engaged in the activities alleged herein. Plaintiff will seek leave to amend this Complaint when the true names and capacities of the Doe Defendants have been ascertained.

## III.    FACTUAL ALLEGATIONS

18.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

19.    Beginning on or about May 15, 2018, Defendant Rivera did not lock the door to Plaintiff Taylor and Plaintiff Tanuvasa's cell after the 9:00 pm count. Defendant Rivera returned to Plaintiffs' cell at approximately 9:40 pm and told Plaintiff Taylor to suck his penis. Defendant Rivera made Plaintiff Taylor sit on the toilet, unzipped his pants, and told Plaintiff Taylor to "suck [his] dick." This occurred while Plaintiff Tanuvasa was also in the cell and was made to witness the whole incident.

20.    On May 18, 2018, Plaintiff Tanuvasa went to the office to request papers and envelopes during evening watch. Defendant Rivera told Plaintiff Tanuvasa that he wanted to show her something on his computer screen. After Plaintiff Tanuvasa came around the desk and stood next to Defendant Rivera to look at the computer screen, Defendant Rivera used his left hand to grab the back of her pants and slid his right hand down Plaintiff Tanuvasa's pants and inserted

his fingers into her vagina. After Defendant Rivera pulled his fingers out, he smelt his fingers and said, "smells good." Plaintiff Tanuvasa was frozen in shock. Just then, another inmate entered the office and Plaintiff Tanuvasa left to return to her cell.

21.    On the evening of May 18, 2018, Defendant Rivera called Plaintiff Taylor to his office. He told her that she will be going to see the "Lt," but instead, Defendant Rivera told her to go into the third-floor storage/janitor closet with him. Defendant Rivera made Plaintiff Taylor give him oral sex and vaginal sex. Defendant Rivera ejaculated on the floor and gave Plaintiff Taylor toilet paper and told her to clean herself. Defendant Rivera told Plaintiff Taylor to say that she went to the Lt's office if anyone asked.

22.    After Plaintiff Taylor returned to her cell, she informed her cellmate, Plaintiff Tanuvasa, of what happened. Plaintiff Tanuvasa gave Plaintiff Taylor a gray shirt to wipe herself. The shirt had "Tanuvasa" on the collar. Plaintiff Taylor also used a douche to clean herself.

23.    On May 22, 2018, at or around 7:00 pm, Defendant Rivera entered Plaintiff Taylor's cell while the other inmates were in the common area. Defendant Rivera made Plaintiff Taylor sit on the toilet and give him oral sex. Defendant Rivera then bent Plaintiff Taylor over the toilet and had vaginal sex with her. Defendant Rivera ejaculated in his pants.  After Defendant Rivera left her cell, Plaintiff Taylor used the same gray shirt to wipe herself. She also used a douche to clean herself.

24.    On May 24, 2018, Defendant Rivera did not lock Plaintiffs' cell after the 4:00 pm count.  Defendant Rivera entered the cell around 4:15 pm and told both Plaintiff Taylor and Plaintiff Tanuvasa that he wanted both. Defendant Rivera proceeded to kiss Plaintiff Taylor and then kiss Plaintiff Tanuvasa.

25.    Defendant Rivera once again did not lock Plaintiffs' cell during the lockdown at 8:45 pm on May 24, 2018.  Defendant Rivera entered their cell after the 9:00 pm count. He told Plaintiff Taylor to get down from her bed, sit on the toilet, and proceeded to have oral sex with her while Plaintiff Tanuvasa was also in the cell.

26.    After one of the incidents, Defendant Rivera said to Plaintiff Taylor, "Thank you, I came so hard."

27.    On or about May 26, 2018, Plaintiff Taylor reported the sexual assault incidents and Plaintiff Tanuvasa made statements as a witness to some of the incidents.  Lt. Martinez was the first person Plaintiffs reported to.  Plaintiff Taylor's statement was taken first and then Plaintiff Tanuvasa's statement was made.

28.    Plaintiff Taylor was taken to Kapiolani Medical Center (KML) Sexual Assault Treatment Center (SATC) by three Federal Correctional Officers (FCO).

29.    On or about May 27, 2018, Plaintiff Tanuvasa decided to report her own sexual assault incident with Defendant Rivera.  Plaintiff Tanuvasa was also taken to KML SATC, however, no rape kit was performed since too much time

had passed.  Plaintiff Tanuvasa signed her statements with Defendant Balacua on May 28, 2019.

30.    During Defendant Balacua's questioning of Plaintiffs' statements, he was hostile, dismissive, and accusatory.  Defendant Balacua made comments such as, "I had to leave a graduation for this bullshit," "so he went raw dog?" "finger banged," "you're full of shit," "still rat," and "will be treated as such."

31.    Plaintiff Taylor never said "no" and did not report the sexual assault sooner because she felt the consequences would be too severe and Defendant Balacua's volatile response to Plaintiffs' reporting confirmed her fear.

32.    On or around June 10, 2018, there was a yelling match between Plaintiff Taylor and Defendant Balacua with the whole pod of females and ward as witnesses.

33.    Plaintiffs felt retaliated against by the staff at FDC Honolulu.  The FCOs made snide comments.  Plaintiffs' cell was shaken down every day.  Defendant Balacua threatened to file "shots" (i.e., write-ups), take away phone and email privileges, shred all mail, and possible additional years to their sentences.

34.    Plaintiffs were even warned by Defendant Balacua that the gray shirt "might disappear."

35.    Plaintiff Tanuvasa was sent to the Special Housing Units (SHU) multiple times with the reason of pending investigation.  Plaintiff would be cleared

after the investigations but still had to stay in the SHU for 30 days each time. Plaintiff Tanuvasa was never told any specific information regarding what the investigation was for.

36.    Plaintiff Tanuvasa was refused from the work line and was used for suicide watch.  However, Plaintiff Tanuvasa was picked up late from work. Plaintiff Tanuvasa was the only inmate that was picked up late, even though she called numerous times.

37.    From September 2, 2018 to September 4, 2018, Plaintiff Tanuvasa was approximately 2 hours 21 minutes over the required work time because she was picked up late.

38.    During an interview with Plaintiff Tanuvasa, she stated that Defendant Balacua informed Plaintiffs Taylor and Tanuvasa that FDC Honolulu does not provide PREA mandated services.  He said they needed to be transferred to Federal Correctional Institution, Dublin (FDI Dublin) for PREA services.

39.    Plaintiffs were only able to speak to the psychologists on staff at FDC Honolulu, who were both males. Plaintiffs did not receive the "Prison Rape Elimination Act" (PREA) services and were not able to PREA counseling. Plaintiff Taylor was transferred to a different facility.  To this day, Plaintiff Tanuvasa is still not receiving PREA services.

40.    After the incidents, Plaintiff Tanuvasa had to take Prozac for

depression and sleeping medications due to the trauma. She is currently still taking the medications.

## IV. CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983 (Negligent Supervision)

41. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

42. In 2003, Hawaii adopted the "Prison Rape Elimination Act" (PREA), 45 U.S.C. 15601 et seq., a federal statute enacted to establish compliance guidelines and address the prison sex problem nation-wide. The goal of PREA is to prevent, detect, and respond to sexual abuse/assault and sexual harassment within confinement settings. PREA establishes a zero-tolerance policy for sexual abuse/assault and sexual harassment.

43. On August 20, 2013, all correctional agencies in the United States were required to be compliant with the PREA standards.

44. Defendant DOJ, FBP, and Kobayashi failed to properly screen, hire, train, and/or supervise their employees and guards, including, but not limited to allowing Defendant Rivera to not lock Plaintiffs' cell after count, allowing him to enter Plaintiffs' cell after lights outs, allowing him to take Plaintiff Taylor into a closet for sexual assault, and allowing Defendant Balacua to insult and harass Plaintiffs.

45. Defendants DOJ, FBP, and Kobayashi failed to provide policies and

procedures that ensure the safety of the women prisoners under their care and control, including, but not limited to, allowing unsupervised, undocumented, and unverifiable female inmate contact with male guards.

46.    Defendants DOJ, FBP, and Kobayashi failed to provide policies and procedures that ensure the safety of the women prisoners under their care and control, including, but not limited to, deliberate indifference to ongoing sexual assaults from Federal Correctional Officers (FCO) to female inmates.

47.    Defendants DOJ, FBP, Kobayashi, and Balacua allowed, ordered, acquiesced to retaliate against Plaintiffs for reporting the sexual assault.

48.    Defendants DOJ, FBP, Kobayashi, Rivera, and Balacua, upon reports from Plaintiffs of the sexual activity going on at FDC Honolulu, retaliated against Plaintiffs by searching cell every day, threaten with write-ups, threaten to take away phone and email privileges, threaten to shred all mail, and late to pick up Plaintiff Tanuvasa from work.

49.    Defendants DOJ, FBP, Kobayashi, Rivera, and Balacua failed to investigate and follow up on reported sexual activities and violations.

50.    Defendants, each of them, through the acts and omissions outlined above were the proximate cause of Plaintiffs' injuries.

51.    Defendants, each of them, acted under color of law.

**COUNT II – Negligence**

52.    Plaintiffs reallege and incorporate by reference all preceding

paragraphs.

53.   Defendants Kobayashi, Rivera, and Balacua were negligent in their actions, omissions, and failures to institute or adhere to proper policies and procedures.

54.   Defendants Kobayashi, Rivera, and Balacua had a duty to ensure the safety of Plaintiffs while incarcerated.

55.   Defendants Kobayashi, Rivera, and Balacua breached their duty to ensure the safety of Plaintiffs while incarcerated.

56.   Defendants Kobayashi, Rivera, and Balacua's breach of their duty to ensure Plaintiffs' was the proximate cause of Plaintiffs' harm.

57.   Defendants Kobayashi, Rivera, and Balacua could reasonably have foreseen the consequences of their negligence.

### COUNT III – Negligent Hiring, Training and Supervision

58.   Plaintiffs reallege and incorporate by reference all preceding paragraphs.

59.   Defendants DOJ, FBP, and Kobayashi are responsible for the planning and supervision of the screening, hiring, training, and supervision of FCOs.

60.   Defendants DOJ, FBP, and Kobayashi, through their respective actions and inactions, failed to properly screen, hire, train and/or supervise Defendants Rivera and Balacua.

61.   Defendants DOJ, FBP, and Kobayashi's actions and inactions were

the proximate cause of Plaintiffs' injuries by and through their failure to properly screen, hire, train, and/or supervise Defendants Rivera and Balacua.

62.    Defendants DOJ is responsible through the doctrine of Respondeat Superior for the Plaintiffs' injuries.

## COUNT IV – Battery

63.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

64.    Defendants, each of them, either actually or by complicity, are responsible for the sexual assaults of Plaintiffs, which occurred at FDC.

65.    Alleged assaults are without legal justification.

## COUNT V – Intentional Infliction of Emotional Distress

66.    Plaintiffs reallege and incorporate by reference all preceding paragraphs.

67.    Defendants Rivera and Balacua knew or should have known his actions would cause Plaintiffs severe emotional distress, and acted with wanton disregard of the rights of Plaintiffs.

68.    Plaintiffs reserve the right to allege this same cause of action against Defendant Kobayashi upon discovery.

69.    As a direct and proximate result of Defendants Rivera and Balacuas' actions, Plaintiffs suffered severe emotional distress.

70.    The acts of Defendants Rivera and Balacua complained of herein were intentional and/or reckless, outrageous, unreasonable, and without just cause or

-13-

excuse, thereby causing Plaintiffs severe and extreme emotional distress.

71.     Plaintiffs are informed, believe and do thereupon allege that Defendants acted herein knowingly, intentionally, willfully, and/or recklessly, with deliberate indifference for the rights, interests, and/or well-being of Plaintiffs.

72.     Plaintiffs have suffered and/or will suffer various economic, special, general, and non-economic damages to be proven at trial.

## COUNT VI –Negligent Infliction of Emotional Distress

73.     Plaintiffs reallege and incorporate by reference all preceding paragraphs.

74.     Defendants, each of them, acted with negligent disregard for the care and welfare of Plaintiffs.

75.     Defendants, each of them, owed Plaintiffs a duty of care.

76.     Defendants breached that duty, and as a direct and proximate result of Defendants' actions, Plaintiffs sustained severe emotional distress.

77.     Defendants and/or Defendant DOJ's administrators, supervisors, corrections officers, counselors, and/or other employees and/or staff, acting within the scope of their employment, negligently caused Plaintiffs to suffer severe emotional distress.

78.     Defendants' acts and/or omissions were performed and/or omitted with malice.

79.     Defendants Rivera and Balacua acted herein within the course and scope of their employment for Defendant DOJ.

80.   Plaintiffs have suffered and/or will suffer various economic, special, general, and non-economic damages to be proven at trial.

## V.   PRAYER FOR DAMAGES

81.   Plaintiff requests monetary damages, in an amount to be proven at trial.

82.   Plaintiff requests Costs of the Suit and all related expenses.

83.   Plaintiff requests Attorney's fees.

84.   Plaintiff requests that any judgment be assessed jointly and severally to the extent allowed by law.

85.   Plaintiff requests any such further relief as the Court deems appropriate and just.


DATED: Honolulu, Hawaii, May 14, 2020.


/s/ Myles S. Breiner
MYLES S. BREINER
TERRANCE M. REVERE
Attorneys for Plaintiffs