IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LORETTA TAYLOR and ATLANTICA TANUVASA,<br><br>            Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>            Defendants. | Case No. 20-cv-00224-DKW-KJM<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** |

Plaintiffs Loretta Taylor and Atlantica Tanuvasa ("Plaintiffs") bring suit against various Federal Bureau of Prisons employees and the United States of America (the "Government") for the sexual harassment and assaults they claim to have endured in 2018 while incarcerated at Federal Detention Center–Honolulu. Because Plaintiffs' *Bivens* claims against Defendants Edward Balacua and Hiromichi Kobayashi are foreclosed by *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and Plaintiffs failed to exhaust their administrative remedies before bringing their tort claims against the Government, Defendants' motions to dismiss are GRANTED.[1]

---

[1] Upon the filing of this Order, only Plaintiffs' individual capacity claims against Defendant Rivera, the perpetrator of the alleged assaults, will remain. Rivera has thus far appeared pro se and is not a party to the pending motions.

## RELEVANT BACKGROUND

In May 2018, Plaintiffs were incarcerated at Federal Detention Center ("FDC")–Honolulu. Dkt. No. 36 at 3–4. At that time, Defendant Kobayashi served as warden of the facility, while Defendants Rivera and Balacua were correctional officers there. *Id.* at 4–5.

On May 15, 2018, while Plaintiffs were in their shared cell, Rivera entered and directed Taylor to perform oral sex. *Id.* Three days later, on May 18, 2018, Rivera "used his left hand to grab the back of [Tanuvasa's] pants[,] slid his right hand down [her] pants, and inserted his fingers into her vagina." *Id.* at 7. That evening, in a storage closet, Rivera forced Taylor to engage in oral and vaginal sex. *Id.* On May 22, 2018 around 7:00 p.m., Rivera entered Plaintiffs' cell and again forced Taylor to engage in oral and vaginal sex. *Id.* at 8. On May 24, 2018, Rivera entered Plaintiffs' cell in the afternoon, told them "he wanted both" of them, and kissed Taylor and Tanuvasa. *Id.* That night, Rivera entered their cell "and proceeded to have oral sex with [Taylor] while Plaintiff Tanuvasa was also in the cell." *Id.*

On May 26, 2018, Taylor reported the sexual assaults to FDC Lieutenant Martinez with Tanuvasa serving as her witness. *Id.* at 8. Taylor was taken to Kapiolani Medical Center for examination. *Id.* at 9. Shortly thereafter, Tanuvasa reported her own sexual assault at the hands of Rivera to Defendant Balacua. *Id.*

Tanuvasa was also then taken to Kapiolani, despite Balacua's "hostile, dismissive, and accusatory" attitude during questioning. *Id.*

After reporting Rivera's assaults, Taylor and Tanuvasa faced retaliation by unnamed corrections officers. Their cell, for instance, was "shaken down" daily, and Tanuvasa was sent to the special housing unit (SHU) without cause. *Id.* at 9–10. Because FDC Honolulu did not provide Prison Rape Elimination Act counseling services, Taylor was transferred to FCI Dublin to receive those services, while Tanuvasa has gone without. *Id.* at 10–11. As a result of Rivera's assaults, Tanuvasa has had to take sleeping medication as well as Prozac to treat depression. *Id.*

Plaintiffs filed their original complaint on May 14, 2020. Dkt. No. 1. After a meet-and-confer in which several Defendants notified Plaintiffs of their intention to file a motion to dismiss, the parties agreed to allow Plaintiffs to amend the complaint. Dkt. No. 33. Plaintiffs filed their first amended complaint on November 13, 2020. Dkt. No. 34. A second meet-and-confer led to the same result. Dkt. No. 35. Plaintiffs filed their second amended complaint ("SAC") on November 24, 2020. Dkt. No. 36. On January 22, 2021, the Government, Balacua, and Kobayashi each filed separate motions to dismiss, arguing that the Court lacks subject matter jurisdiction and/or the SAC fails to state a claim. Dkt. Nos. 39, 40, 41. The motions have now been fully briefed. This order follows.

## **LEGAL STANDARD**

### I.    **Motion to Dismiss Under Rule 12(b)(1)**

On a motion to dismiss, "[t]he party asserting jurisdiction bears the burden of establishing subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008); *accord Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). How the Court resolves the motion depends on whether the defendant raises a "facial or factual" jurisdictional attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A defendant asserts a "facial" challenge when he accepts the plaintiff's allegations as true but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id.* A defendant raises a "factual" challenge if he "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"When the defendant raises a factual attack, . . . [t]he plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met," and "the district court may resolve those factual disputes itself." *Id.* at 1121 (citations omitted); *see also Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *Safe Air for Everyone*, 373 F.3d at 1039 (stating that "the district court

may review evidence beyond the complaint" in resolving a "factual" challenge "without converting the motion to dismiss into a motion for summary judgment").

## II. Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S.

---

[2]The pleading standard Plaintiffs quote, Dkt. No. 43 at 3–4; Dkt. No. 44 at 3–4, is from a case decided in 2001, prior to *Twombly* and *Iqbal*. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). That pleading standard then is no longer good law.

at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2).  *Id*. at 679.

## **DISCUSSION**

Plaintiffs seek to hold Balacua and Kobayashi personally liable for Rivera's sexual assaults by claiming each failed to: (1) adequately hire, train, and supervise prison correctional officers; and/or (2) appropriately respond to Plaintiffs' reports of Rivera's conduct.  Dkt. No. 36 at 14–19.  Plaintiffs seek to hold the Government liable under the Federal Tort Claims Act ("FTCA") for its employees' failure to screen, hire, train, and supervise employees, to implement adequate policies and procedures to protect Plaintiffs from Rivera's conduct, and to properly investigate Rivera's assaults once reported by Plaintiffs.[3]  *See id.* at 19–22.

As discussed below, Plaintiffs' claims against Balacua and Kobayashi are not cognizable under *Bivens*.  Further, the Court lacks subject matter jurisdiction over Plaintiffs' tort claims against the Government because Plaintiffs failed to exhaust their administrative remedies prior to filing those claims.  For these reasons, Defendants' motions to dismiss are GRANTED.

---

[3]The Ninth Circuit recognizes negligent hiring or supervision as a cognizable legal theory for Federal Tort Claims Act ("FTCA") liability.  *Senger v. United States*, 103 F.3d 1437, 1440–42 (9th Cir. 1996).

## I. *Bivens* Claims Against Individual Defendants (Count I)

### A. Framework

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized for the first time an implied cause of action for damages against federal actors in their individual capacities for violating a plaintiff's civil rights. *See Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018). To state a *Bivens* claim for damages, a plaintiff must allege facts showing that: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged deprivation was committed by a federal actor. *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

The Supreme Court has recognized only three *Bivens* claims: "a claim against FBI agents for handcuffing a man in his own home without a warrant;[4] a claim against a Congressman for firing his female secretary;[5] and a claim against prison officials for failure to treat an inmate's asthma."[6] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017). Beyond these cases, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Crop. v. Malesko*, 534 U.S. 61, 68 (2001); *accord Abbasi*, 137 S. Ct. at 1857. Indeed, expanding *Bivens* claims beyond these

---

[4]*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[5]*Davis v. Passman*, 442 U.S. 228 (1979).
[6]*Carlson v. Green*, 446 U.S. 14 (1980).

7

contexts "is now a disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857 (citing *Iqbal*, 556 U.S. at 675); *see also Hernandez v. Mesa*, 140 S. Ct. 735, 742–43 (2020) ("for almost 40 years, we have consistently rebuffed requests to add to the claims allowed under *Bivens*" (citations omitted)).

The Court applies a two-step test to determine whether a *Bivens* claim should proceed. *Abbasi*, 137 S. Ct. at 1859–60. First, the Court considers whether the claim arises in a new context from previously established *Bivens* cases. Second, if it does, the Court determines whether "special factors counsel[] hesitation" in expanding *Bivens* to that new context. *Id.* at 1857, 1859–60. The Supreme Court instructs that "separation-of-powers principles are or should be central to the [special factors] analysis. The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." *Id.* at 1857 (citation omitted). The Court must also consider "whether any alternative, existing process for protecting the [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (citation omitted).

### B. This Case Presents a New *Bivens* Context

Plaintiffs agree that their *Bivens* claim arises in a new context and thus concede step one. Dkt. No. 43 at 10–12 (acknowledging their claims against

Kobayashi arise in a new context); Dkt. No. 44 at 7 (acknowledging same regarding claims against Balacua). They likely do so because while this case involves some of the same Constitutional rights at issue in prior *Bivens* cases—*i.e.*, rights secured by the Fourth and Eighth Amendments—it nonetheless presents a new context. *Bivens* itself did not involve the Fourth Amendment rights of an inmate[7] and, in *Carlson*, the Eighth Amendment claim arose out of a failure by prison officials to provide an inmate with medical treatment. The facts here— alleging a prison warden and correctional officer failed to protect inmates from sexual harassment and assault by prison staff—are nothing like those in either *Bivens* or *Carlson*. Thus, this case clearly presents a new context, requiring the Court to consider whether any special factors counsel against recognizing Plaintiffs' *Bivens* claims.

### C. Special Factors Counsel Against Recognizing a *Bivens* Claim Here

Defendants Balacua and Kobayashi argue that the availability of alternative remedies and separation-of-powers concerns counsel against recognizing a *Bivens* remedy in this case. Dkt. No. 41-1 at 11–18; Dkt. No. 45 at 9–10. They point to three alternative remedies that were available to Plaintiffs: (1) the BOP's internal

---

[7] It is very difficult to parse what Fourth Amendment right Plaintiffs are alleging Defendants Kobayashi and Balacua violated. *See* Dkt. No. 36 at 14–19. The Court notes that inmates have no expectation of privacy in their prison cells. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Thus, any claim arising out of a "shakedown" of Plaintiffs' prison cell, *see* Dkt. No. 9–10, is not cognizable, assuming that Kobayashi or Balacua even participated in such conduct.

9

administrative remedy program; (2) the FTCA; and (3) the Prison Litigation Reform Act ("PLRA"). Dkt. No. 41–1 at 11–15. As for separation-of-powers concerns, Defendants argue that prisoner litigation, and, in particular, tort and sexual abuse claims by prisoners, is an area of law in which Congress is frequently engaged. *Id.* at 15–18. The Court agrees that these two factors counsel strongly against recognizing Plaintiffs' *Bivens* claims.

Plaintiffs argue that the remedial schemes detailed above were not "meaningfully available" to them. Dkt. No. 44 at 8. Why that was the case is never explained. Indeed, the facts contradict their assertion. Plaintiffs themselves allege that they reported Rivera's sexual assaults within days of occurrence. Dkt. No. 36 at 6–9 (first assault occurred on May 15, 2018 with both Taylor and Tanuvasa reporting Rivera by May 27, 2018). Both were provided with sexual assault-specific medical care. *Id.* at 9. They thereafter cooperated with the United States Attorney's Office regarding investigating and potentially prosecuting Rivera. Dkt. No. 43 at 8. At that time, they were provided counsel. *Id.* These facts, even read in a light most favorable to the Plaintiffs, show that reporting mechanisms were not only available to Plaintiffs, but they took advantage of them. Plaintiffs have provided ***no*** facts to the contrary—*i.e.*, demonstrating *how* they were precluded from accessing the proper authorities.

Moreover, recognizing a *Bivens* remedy in Plaintiffs' new context would undermine Congressionally-created recovery schemes. The Prison Litigation Reform Act ("PLRA") explicitly allows an inmate who has suffered a sexual assault to bring a claim. 42 U.S.C. § 1997e(e) (allowing recovery if inmate can prove a "sexual act"); *see also* 18 U.S.C. § 2246(a) (defining "sexual act"). And the FTCA is *the* mechanism Congress has established for creating Governmental liability for the negligent conduct of its employees (precisely what is alleged in Count II). Thus, Congress has spoken on when and how a victim in Plaintiffs' shoes can recover. This Court will not by judicial fiat alter the processes Congress designed. *See Abbasi*, 137 S. Ct. at 1857 ("The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts? The answer most often will be Congress." (citation omitted)); *see also See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (rejecting inmate's *Bivens* claim, in part, because the PLRA and FTCA were available alternative remedies).[8]

Because there were alternative remedies available to Plaintiffs and separation-of-powers concerns counsel against it, the Court holds that *Bivens* should not be extended into Plaintiffs' new context. Accordingly, Plaintiffs'

---

[8] Further, state tort claims against the intentional tortfeasor are also available to Plaintiffs, *see* Dkt. No. 36 at 22–25 (state tort claims against Rivera), providing yet another recovery mechanism for victims of the types of sexual assaults alleged here.

*Bivens* claims (Count I) are DISMISSED.⁹  As extension of a *Bivens* remedy is a legal question not susceptible to amendment of the pleadings, the Court finds amendment would be futile.  Thus, DISMISSAL is WITH PREJUDICE.

## II.     Tort Claims Against the Government (Count II)[10]

The FTCA provides that the United States shall be liable, to the same extent as a private party, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. §1346(b)(1); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . .").

Before bringing an FTCA claim in federal court, a plaintiff must, within two years of the claim accruing, present the claim to the appropriate federal agency and thereafter have the claim denied by the agency in writing.  28 U.S.C. § 2401(b); 28 U.S.C. § 2675(a).  However, "the failure of an agency to make final disposition

---

⁹Because Plaintiffs' *Bivens* claims against Balacua and Kobayashi are not cognizable, the Court does not reach the question of whether Defendants are also entitled to qualified immunity.  *See* Dkt. No. 39-1 at 10–14; Dkt. No. 41-1 at 18–23.

[10]Plaintiffs clarify that only the tort claim alleged in Count II is brought against the Government. Dkt. No. 43 at 10 ("Plaintiffs clarify that as to Counts III through V, those claims are being brought solely against Defendant Rivera and not against [the Government].").  The Court takes Plaintiffs at their word and, thus, Counts III through V against the Government are DISMISSED WITH PREJUDICE.  The Court passes no judgment on whether those Counts are properly alleged against Defendant Rivera.

of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim . . . ." *Id.* "A claim is deemed presented for purposes of [Section] 2675(a) when a party files '(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim.'" *Blair v. I.R.S.*, 304 F.3d 861, 864 (9th Cir. 2002) (quoting *Warren v. United States Dep't of Interior Bureau of Land Mgmt.*, 724 F.2d 776, 780 (9th Cir.1984) (en banc)). "The FTCA's exhaustion requirement is jurisdictional and may not be waived." *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017) (citing *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992)).

Plaintiffs claim they "have attempted and exhausted their administrative remedies." Dkt. No. 36 at 11. The Government poses a factual attack on this allegation, arguing that, despite the fact that the BOP has an established tort claims process and Plaintiffs were educated on and had ready access to that process, Dkt. Nos. 40-7, 40-8, 40-9, 40-10, Plaintiffs failed to present a tort claim to the BOP. Dkt. No. 40-1 at 7–12. In support, the Government offers a declaration by Jandi Lum, the Legal Assistant and Administrative Remedy Clerk at FDC Honolulu. Dkt. No. 40-2. Ms. Lum avers that "[a]s of January 16, 2021, [FDC Honolulu's tort claim database] reflects no tort claims filed by or on behalf of either plaintiff Taylor or plaintiff Tanuvasa. Nor does [that database] reflect BOP rejected any

13

attempted tort claims submissions filed by or on behalf of either plaintiff Taylor or plaintiff Tanuvasa." *Id.* at 10–11.

Plaintiffs argue that their initial reports of the sexual assaults, subsequent written reports, and cooperation with the U.S. Attorney's Office on Rivera's possible criminal prosecution satisfy the FTCA exhaustion requirements. Dkt. No. 43 at 7–8; *see also* Dkt. No. 43-3 (Plaintiffs' written reports of the assaults); Dkt. No. 43-4 (email exchanges related to Rivera's possible criminal prosecution). In the alternative, they argue exhaustion should be excused. Dkt. No. 43 at 8–10. According to Plaintiffs, exhaustion may be excused where: (1) correctional officers deny an inmate the necessary forms to file grievances; (2) there are threats of force or retaliation if an inmate files a grievance; and (3) other barriers to filing grievances are constructed. *Id.* Plaintiffs imply, without explicitly arguing, that these circumstances apply to the present case. *Id.* The Court addresses each argument in turn.

Plaintiffs' reports and cooperation with the U.S. Attorney's Office are insufficient to satisfy the FTCA exhaustion requirement. Notwithstanding the fact that Plaintiffs did not file a tort claim consistent with BOP regulations—*see* Dkt. Nos. 40-8, 40-10 (prison handbooks provided to inmates explaining a tort claim should be filed on "Standard Form 95" or "SF-95")—none of their communications specify a "sum certain damages claim." *See Blair*, 304 F.3d at

14

864 (9th Cir. 2002); *see also Jacobson v. U.S. ex rel. U.S. Postal Serv.*, 276 F. Supp. 2d 1106, 1109–10 (D. Nev. 2003) (explaining that a dollar amount is required to meet the sum certain requirement).  Indeed, other than requesting a new prison counselor, Dkt. No. 43-3 at 6–7, asking for an opportunity to speak with a Prison Rape Elimination Act counselor, Dkt. No. 43-3 at 8, and asking for updates on Rivera's possible criminal prosecution, Dkt. No. 43-4 at 5–6, Plaintiffs asked for no relief, let alone tort damages.  *See* Dkt. Nos. 43-3, 43-4.  Given Ms. Lum's representations that no formal tort claims were submitted, Dkt. No. 40-2 at 10–11, and a lack of evidence to the contrary, the Court finds Plaintiffs have failed to meet the FTCA exhaustion requirement.

Plaintiffs alternative argument—that exhaustion should be excused—is unpersuasive because Plaintiffs did, in fact, report the sexual assaults shortly after they occurred.  Dkt. Nos. 43-3, 43-4.  In other words, Plaintiffs were not prevented from filing grievances—quite the contrary.  They candidly reported their sexual assaults and cooperated in an ongoing investigation related to Rivera's possible criminal prosecution.  Dkt. No. 36 at 8–11; Dkt. No. 43-3; Dkt. No. 43-4.  And even accepting their allegations of retaliation as true, that retaliation occurred *after* Plaintiffs reported the sexual assaults.  Dkt. No. 36 at 9–10.  In short, the facts as alleged and represented do not support a finding that Plaintiffs were *precluded* from filing a tort claim with the BOP arising out of Rivera's sexual

15

assaults; it supports only a finding that they did not do so.   Accordingly, exhaustion is not excused.

Because the Court finds Plaintiffs failed to satisfy the FTCA's exhaustion requirement and the circumstances do not warrant excusing that requirement, Plaintiffs claims against the Government in Count II of the SAC are DISMISSED. As Plaintiffs have already had two opportunities to amend their complaint and failed to present evidence of exhaustion in response to their LR7.8 meet-and-confer discussions with the Government, or in response to the Government's motion to dismiss, the Court finds further amendment would be futile.   Thus, DISMISSAL is WITH PREJUDICE.

## **CONCLUSION**

For the reasons set forth herein, Defendants' motions to dismiss, Dkt. Nos. 39, 40, and 41, are GRANTED.   All claims against Defendants Balacua, Kobayashi, and the United States are DISMISSED WITHOUT LEAVE TO AMEND.

DATED: March 10, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Loretta Taylor and Atlantica Tanuvasa v. United States of America, et al.,* Civil No. 20-00224-DKW-KJM; **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**